IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01895-CNS-TPO

MATTHEW LINDEN,

Plaintiff,

v.

HCA-HEALTHONE LLC,

Defendant.

---

**RECOMMENDATION**

---

**Timothy P. O'Hara, United States Magistrate Judge.**

Before the Court is Defendant HCA-HealthONE LLC's Motion to Compel Arbitration and Stay Proceedings [ECF 21]. U.S. District Judge Charlotte N. Sweeney referred the Motion to this Court. *See* ECF 29. Having considered the Parties' briefing,[1] the Second Amended Complaint ("SAC") [ECF 8], and the relevant legal authority, this Court **recommends** that the Motion [ECF 21] be **granted**.

## FACTUAL BACKGROUND[2]

On July 1, 2021, Plaintiff began his residency in Defendant's Surgery Residency Program ("the Program") at its hospital and medical center in Lone Tree, Colorado. ECF 8 ¶ 8. Plaintiff

---

[1] The briefing consists of Defendant's Motion [ECF 29], Plaintiff's "Motion to Oppose Arbitration and Stay Proceedings" [ECF 23] (which the Court construes as a Response), and Defendant's Reply [ECF 27].

[2] The Court takes the factual allegations from the SAC, ECF 8, and assumes them true for purposes of this Recommendation.

successfully completed his first year of the Program (post-graduate year one or "PGY1"). *See id.* ¶¶ 10-12 (alleging he exceeded the Program's expectations as measured by year-end milestones).

Around May of 2022, Plaintiff's "relationship with his fiancée, a relationship dating back to their first year of college, began to deteriorate." *Id.* ¶ 15. Around June of 2022, these issues culminated in Plaintiff ending the engagement and relationship. *Id.* Thereafter, Plaintiff alleges he fell into a state of depression, which developed into suicidal ideation. *Id.* ¶ 16.

On July 1, 2022, Plaintiff was promoted to a PGY2 resident. *Id.* ¶ 13. Despite Plaintiff's mental health struggles, Plaintiff alleges that neither his supervisors nor co-residents identified any "significant decline in [his] job performance." *Id.* ¶ 17. Around August 19, 2022, Plaintiff disclosed his depression to a coworker, who notified Plaintiff's supervisor, Dr. John Weaver. *Id.* ¶ 18. On August 19, 2022, Plaintiff candidly disclosed his personal circumstances to Dr. Weaver, including "his recent life events, his social isolation and lack [of] basic functionality outside of work, and his suicidal ideations." *Id.* ¶ 19. Plaintiff asked for help, and in return, Dr. Weaver suggested that Plaintiff "go on leave." *Id.* ¶ 20.

Plaintiff expressed reservations about taking leave, fearing he would fall behind and ultimately lose his residency position. *Id.* ¶ 21. Dr. Weaver proposed that one or two months' leave could still permit Plaintiff to remain on track, and leave exceeding two months could be accommodated in other ways. *Id.* This assurance that Plaintiff would not lose his position "was essential to [Plaintiff] agreeing to take leave." *Id.* ¶ 22.

On September 1, 2022, Plaintiff's went on leave. *Id.* ¶ 25. After the meeting with Dr. Weaver, Plaintiff's communications "regarding the bureaucratic elements of obtaining, characterizing, and returning from leave" were only with Program Coordinator, Ms. Jackie Lentell. *Id.* ¶ 26.

Over the next several months, Plaintiff sought mental health treatment from both a Colorado Physician's Health Program ("CPHP")-referred therapist and at Skyridge from a psychiatric resident. *See id.* ¶¶ 33-40. The latter agreed to complete the requisite paperwork and write a note authorizing Plaintiff to return to work. *Id*. ¶ 40.

Plaintiff intended to submit the proper documentation to return to work on November 1, 2022. *See id.* ¶¶ 37-40. As of November 7, 2022, Plaintiff submitted what he believed to be the necessary paperwork to Ms. Lentell. *Id.* ¶¶ 41-42.

On November 9, 2022, Plaintiff received a text message from Ms. Lentell informing him that his Family Medical Leave Act (FMLA) period was ending and that "he could be terminated." *Id*. ¶ 46. She informed him that his authorization must include a physician's clearance for Plaintiff to return to work with patient care. Plaintiff had not previously been informed that his physician letter needed to specifically authorize return to work *with patient care*. *Id.* Throughout November of 2022, Plaintiff attempted to obtain an appropriate letter, with CPHP ultimately submitting one on November 21, 2022. *See id.* ¶¶ 45-50. On November 24, 2022, Plaintiff's 12-week FMLA leave concluded. *Id.* ¶ 49. On December 1, 2025, Plaintiff was informed that CPHP's letter was insufficient for a return to work. *Id.* ¶ 51.

On January 31, 2023, Plaintiff was informed that he had the choice to resign or "otherwise he would face termination. *Id.* ¶ 52. The Program then issued a letter, providing official notice of Plaintiff's termination. *Id.* ¶ 53. The letter cited as grounds for termination failures to: (1) provide documentation to TAFW, (2) provide return to work certification, and (3) to follow up with Skyridge after early December. *Id.* ¶ 53.

Plaintiff brings two claims pursuant to the Americans with Disabilities Act ("ADA"). Claim One generally alleges that his termination was the result of disability discrimination, in

violation of 42 U.S.C. § 12112(a), on the basis of his depression. *See id.* ¶ 56. Claim Two alleges that Defendant failed to accommodate Plaintiff's disability, in violation of § 12112(b)(5)(A).

Plaintiff pursued his administrative remedies through the EEOC and attaches documents from those proceedings, including the Dismissal and Notice of Right to Sue. *See id.* at 13-19; ECFs 8-1, 8-2, 8-3.

## RELEVANT PROCEDURAL HISTORY

On November 5, 2025, Defendant filed its Motion to Compel Arbitration [ECF 21], which argues that the Court should enforce the Parties' arbitration agreement and stay the present proceeding. *See* ECF 21. Defendant asserts that Plaintiff enrolled in Sky Ridge's Graduate Medical Program ("GMA") and signed the GME Resident Agreement ("the Agreement"). *Id.* at 7. The GME Resident Agreement contained the following provision:

> **Any controversy or claim arising out of or related to the employment relationship, this Agreement, or any breach thereof, or any matter that could be presented in a court of law shall be settled by arbitration in the County where Hospital is located**, in accordance with the rules and procedures of alternative dispute resolution and arbitration established by the Alternative Dispute Resolution Service of the American Health Lawyers Association ("AHLA"), and judgment upon any award rendered may be entered in any court having jurisdiction thereof . . . Such arbitration shall be conducted before a single AHLA arbitrator selected jointly by the parties, or in the event the parties are unable to agree, designated by the AHLA. To the extent permitted by law, the Parties hereby jointly and severally waive any and all right to trial by jury in any action or proceeding arising out of or relating to the employment relationship or this Agreement, or the obligations hereunder. The Parties each represent to the other that this Waiver is knowingly, willingly and voluntarily given. This provision does not preclude Hospital from filing any cross-claim or third-party claim against Resident in a court of law as a result of litigation initiated against Hospital by a third party.

*Id.* at 7-8 (citing ECF 21-1 ¶¶ 11-12 (Lentell Decl.) (emphasis added in ECF 21-1)).

Plaintiff submitted a Response, ECF 23, that contains a brief statement of Plaintiff's opposition without any substantive legal argument. Plaintiff states only: "It seems unjust and

unequitable for my discrimination claims against the defendant to be judged and decided by a party hired by the defendant." *Id.*

On January 15, 2026, a Scheduling Conference[3] was held in this matter. *See* ECF 33. As part of that proceeding, the Court addressed Defendant's Motion to Compel Arbitration and noted that Plaintiff had submitted only a brief Response. Upon Plaintiff's request, the Court heard Plaintiff's general arguments in opposition to compelling arbitration.[4]

Based on the record before it, the Court finds that Defendant's Motion to Compel Arbitration [ECF 21] should be granted.

## LEGAL STANDARDS

### I. Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "'pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.'" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "'Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on the plaintiff's behalf.'" *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). And "the court cannot take on the responsibility of serving as the litigant's

---

[3] The Court ultimately did not proceed with the Scheduling Conference and granted Defendant's separate Motion for Stay of Scheduling Conference and Related Deadlines [ECF 28], which was unopposed by Plaintiff. *See* ECF 33.

[4] Although not documented in the Minute Entry, the Court has reviewed the audio recording of this proceeding, and the transcript can be made available upon request. *See* ECF 33 at 2 (providing instructions for ordering transcripts). The representations made on the record are incorporated into the materials the Court has considered in issuing this Recommendation. Because Plaintiff is *pro se*, the Court also considers Plaintiff's arguments as supplemental to his Response, ECF 23. Thus, to the extent Plaintiff requests a Hearing in his Response, *id.*, the Court notes that Plaintiff has been afforded an opportunity to be heard on this issue.

attorney in constructing arguments and searching the record." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

**II. Motion to Compel Arbitration**

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, which "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]" *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

There is a clear presumption in favor of enforcing arbitration clauses. And the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. § 3, 4). Accordingly, courts should "rigorously enforce agreements to arbitrate, even if the result is 'piecemeal litigation,' at least absent a countervailing policy manifested in another statute." *Id.* at 221 (citing *id*., 470 U.S. at 215 n.1) (referencing an arbitration agreement that ran afoul of a separate federal statute). Courts must also consider whether the agreement to arbitrate is invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 507 (2018) (citing *AT&T Mobility LLC*, 563 U.S. at 339).

In considering a motion to compel arbitration under the FAA, the court applies a two-step

inquiry. First, the Court must "determine whether there was an agreement, and whether the agreement provided the moving entity . . . with the right to compel arbitration." *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018) (citing *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017)). Second, if the Court is satisfied that the agreement provides the movant a right to compel arbitration, "then [it] must analyze whether the facts at issue—i.e., the allegations in the complaint—are within the scope of the arbitration agreement." *Id.* (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219-20 (10th Cir. 2002)).

## ANALYSIS

### I. Validity of the GME Resident Arbitration Agreement

The Court must first determine whether the Parties entered into a valid agreement to arbitrate. *See Cavlovic*, 884 F.3d at 1057 (citation omitted). This threshold question "is simply a matter of contract between the parties." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (quotations omitted).

Defendant has submitted the Declaration of Ms. Lentell and the GME Resident Agreement. ECF 21-1. On June 21, 2022, Plaintiff signed the Agreement, and on June 7, 2022, Kirk McCarty signed as Defendant's representative. *Id.* at 13. Plaintiff's Response does not challenge the validity of this agreement. *See* ECF 23.

At the January 15, 2026, hearing, the Court raised the issue of Defendant's Motion, noted several times that the Agreement was signed by both Parties, and even read the arbitration clause at issue. Plaintiff did not object to the Court's repeated observations that both Parties signed the agreement or that it represented a valid contract. The Court also expressly asked if Plaintiff had any other arguments he would like to make. Plaintiff still did not contest the validity of the agreement, instead arguing that his disability discrimination claims should not fall within the

agreement's broad terms. Given Plaintiff's concession that he signed the Agreement, the Court finds that Plaintiff has waived any arguments against the existence and validity of the arbitration clause.

To the extent Plaintiff raises in his Response that compelling arbitration would be "unjust and unequitable" because his disability discrimination claims would "be judged and decided by a party hired by the defendant," ECF 23, the Court construes this as an assertion that enforcement would be unconscionable. Unconscionability is an equitable consideration that may render an arbitration agreement unenforceable. *See AT&T Mobility LLC*, 563 U.S. at 339 (citation omitted). Whether the arbitration agreement is unconscionable is determined by Colorado law, and the party challenging the enforceability of the agreement bears the burden to demonstrate unconscionability. *See Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp 2d 1072, 1079-80 (D. Colo. 2012). Courts look at all of the circumstances surrounding the formation of the contract, including the lack of opportunity by a party to read the contract, use of fine print, absence of evidence that the provision was commercially reasonable, the terms themselves, and the relationship of the parties. *Id*. (citing *Vernon v. Qwest Comms. Int'l, Inc*., 925 F. Supp. 2d 1185, 1194 (D. Colo. 2013) (citing *Davis v. M.L.G. Corp*., 712 P.2d 985, 991 (Colo. 1986)). Plaintiff must demonstrate both procedural and substantive unconscionability. *See Vernon*, 925 F. Supp. 2d at 1194 (citation omitted).

Plaintiff provides no evidence to suggest the contract itself, or the arbitration provision within it, was unconscionable. Plaintiff's cursory unconscionability argument is based on his misconception of the arbitration clause. The Agreement states that the Parties are to jointly select an AHLA arbitrator. ECF 21-1 at 11. In the event the Parties are unable to agree, *the AHLA*, not Defendant, is to designate the arbitrator. *Id.* Any opposition by Plaintiff on the grounds that Defendant would hire a biased arbitrator is thus inconsistent with the Agreement itself. Moreover,

the Court must consider the Supreme Court's clear guidance that the FAA "requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes." *Epic Systems Corp.*, 584 U.S. at 506 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). Since Plaintiff has not demonstrated any grounds for this Court to find the arbitration clause unconscionable, the Court finds that the arbitration clause is valid and enforceable.

**II. Scope of the Agreement**

Because Plaintiff is proceeding as a pro se litigant, the Court will liberally construe and incorporate his arguments made on the record at the January 15, 2026 Hearing—that he did not believe his disability discrimination claims are covered by the arbitration clause's broad language—as a challenge to the scope of the Agreement.

Where, as here, the arbitration clause is broad, the Court should resolve any doubts in favor of arbitration. *See AT&T Techs., Inc. v. Commc'ns Workers of Am*. 475 U.S. 643, 650 (1986) (citations omitted). And "in the absence of any express provision excluding a particular grievance from arbitration," the Supreme Court has unambiguously stated, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (citation and quotations omitted). Statutory claims, including those for employment discrimination pursuant to the ADA as Plaintiff alleges, are generally enforceable under the Federal Arbitration Act. *See McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998) ("In fact, the [ADA] encourages arbitration of Americans with Disabilities disputes, where appropriate." (citing 42 U.S.C. § 12212)); *see also Fuller v. Pep Boys—Manny, Moe & Jack of Delaware, Inc.*, 88 F. Supp. 2d 1158, 1161 (D. Colo. Mar. 29, 2000) (citing *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 39 F.3d 1482, 1487 (10th Cir. 1994)) (noting federal courts will enforce arbitration agreements for employment

discrimination claims under ADA); *cf. Zheng v. Halliburton Energy Servs., Inc.*, No. 23-cv-00098-ABJ, 2023 WL 7538331, at *8 (D. Wyo. Oct. 30, 2023) (rejecting argument that enforcing arbitration would "undermine" the ADA, instead finding that it would "simply shift[] the medium of resolution.").

Here, the Agreement clearly covers "[a]ny controversy or claim arising out of or related to the employment relationship." ECF 21-1 at 11. Because the Parties' Agreement contains no limiting clause, the Court must presume that Plaintiff's ADA claims, all pertaining to Plaintiff's termination, ECF 8 at 3, fall within the scope of the arbitration clause. Enforcing the arbitration agreement here would not forego Plaintiff's statutory rights, nor would it be inconsistent with the ADA's text. *See* 42 U.S.C. § 12212. As a result, the Court finds that Plaintiff's claims alleged in the SAC are subject to arbitration pursuant to the Parties' broad agreement to arbitrate.

## CONCLUSION[5]

For these reasons, the Court respectfully **recommends** that Defendant's Motion to Compel Arbitration [ECF 21] be **granted**. Pursuant to 9 U.S.C. § 3, this matter should be **stayed** pending arbitration.

---

[5] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* review by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

DATED at Denver, Colorado, this 20th day of August, 2026.

BY THE COURT:

Timothy P. O'Hara
United States Magistrate Judge